We will turn to the next case on our calendar, Ketcham v. City of Mount Vernon, and we have both attorneys there. Yes, we do. Good morning, counsel. Mr. Shanys, you may begin. Turn on your microphone. Thank you. Okay. Thank you, Judge Pooler. Good morning, your honors, and may it please the court. My name is David Shanys. I represent the appellant, Ronald Ketcham, in this case. This is a 1983 excessive force case that squarely presents the question of how much force can police officers use when effectuating an arrest. What makes this case somewhat different from most is that it's undisputed in this case that the arrestee, Mr. Ketcham, never should have been arrested. He was mistaken for a person for whom there was a misdemeanor arrest warrant, and the police officers, with that warrant, rather than go and speak to the person who they thought might be the person they were looking for, immediately resorted to force, throwing Mr. Ketcham up against the fence, tightly handcuffing him. I'm a little confused by Judge Bruschetti's decision. I am under the impression that on a motion for summary judgment, we accept as true all of the plaintiff's claims. Isn't that true? Is that your understanding of how the law works? Of course it is. Yes. Of course, I'll ask Mr. Quinn also, but it seems to me in his restatement of the facts, he adopts the practically verbatim. How could that be? Well, it is a bit baffling, and we were certainly taken aback by it, and we do raise the issue of apparent bias in this appeal. But after the pre-motion conference where we discussed this issue with Judge Bruschetti, the court would start with the account of the moving party, and then say, and by the way, the non-moving party has a different recollection of these facts. That is very telling. So the judge seemed to be... Oh, pardon me. Go ahead, Judge Pooler. Go on, Judge Pooler. So Judge Bruschetti seemed to believe that there are some injuries that are too insignificant to support a proposition. If your client had been bumped, not getting into the police car, he hadn't been put up against the fence, but he had just been bumped and there was an apology given, and yet there was no basis for him to be arrested at all, as I guess all seem to agree. There was just a mistake. Would that still be enough to support a constitutional claim such as the one you've brought? Well, I will say, Judge Carney, I think that it's difficult when your honor uses the word bumped, because we've had so much of a sort of debate over language. Hitting, bumping, slamming, you know, what distinguishes one of those from the other is difficult to say. I think what this court's precedents make clear is that the gratuitous use of force that pain is a form of injury. As this court has recognized, I don't think they've squarely addressed it in the Fourth Amendment excessive force context, but in other contexts, the court has said pain satisfies the injury requirement that meets the constitutional threshold. Where gratuitous force is applied, then yes, there does not need to be lasting injury to sustain a claim for excessive force. And here we have both the shoving of the appellant's head into the police car, which certainly was interpreted as stop mouthing off to us, you know, sort of retaliatory strike. But we also have the handcuffing injuries. And this court does have a specific set of precedents with respect to handcuffing and my adversary have acknowledged that the key question in handcuffing cases is whether the officers had reason to know that the handcuffs were applied excessively tightly, either because it was apparent from the circumstances or because the person complained that they were too tight. And while the district court acknowledged that that I'm sorry, while while my doesn't actually contend with that in his brief and and how that's relevant to that aspect of the excessive force claim. And what about the appellant's position on qualified immunity? They raised qualified immunity saying these were kind of within the ordinary course of a an arrest that they thought they were supposed to be making when they when they made it and there is no clearly established standard, you know, with regard to exactly how tight the handcuffs would be, how much they needed to know, you know, a relatively minor, you know, shove into the car. What's your position on qualified immunity? Yes, sure. Our position on qualified immunity is that there does not need to be for to defeat qualified immunity, there does not need to be a case directly on point that presents the exact same set of facts and finds forced to be excessive. You know, there are many there. Sorry, your honor. They thought qualified immunity, they'd have to accept as true everything the plaintiff said, which is a real disincentive in this case, where the stories are so divergent. I guess ultimately, yes, what what I'm, what I'm arguing is that both questions, the questions of excessive force and the question of qualified immunity rise or fall with the disputed factual issues and the facts are sharply in dispute in this case. So you have a minute left. So finally, I would just like to, to address the bias issue. It's, you know, asking this court to exercise its discretion to reassign the case on remand is is not a remedy that I've ever sought before in my career. It's not one that I sought lightly. I think I was particularly and I think I was particularly struck not by the facts in the summary judgment decision, but by the somewhat gratuitous commentary by the district court about your clients got your client got his feelings hurt, which was striking to me, not only because it's word for word, a way that Mr. Quinn described my client's case to me on a number of occasions. But it is, frankly, patronizing and rather insulting way to characterize what, you know, the plaintiff presents as a serious abuse of arrest authority and the and the authority to use force by a police officer. So even if it was even if his physical injuries were de minimis, as the judge described it, there's a constitutional injury here. And that's what we're talking about. Isn't that correct? Indeed, time time and time again, this court has recognized that many courts have recognized that excessive force claims can give rise to a nominal damages award, for example. So the extent of injury and long lasting injury has never been the bellwether of whether a claim is stated. Thank you, Mr. Quinn. Good morning, Your Honors. My name is Andrew Quinn. I represent the city of Mount Vernon as well as the two individually named officers. Your Honor, I'll remind the courts that there is no false arrest claim here. The reason that the two named defendants were in the shell was because they were in possession of a photograph of an individual wanted for a sexual crime, forcible touching. And unfortunately for plaintiff, he matched extraordinarily closely to that photograph, which even he acknowledged at his deposition. The officers stepped out of the car, placed the plaintiff under arrest, pushed him against the fence. Everybody agrees to that. Handcuffed him. Everybody agrees to that and placed him in a car where after a few minutes, plaintiff identified himself and he was released. Now, you're asking about the court adopting the recitation of the officers. Quite frankly, Judge, I don't read the decision that way because when it comes to the injuries that the court cites and relies upon in reaching its determination, it cites entirely what plaintiff alleges. And quite frankly, there are no injuries in this case. Right. But the facts of the confrontation is directly taken from the officers version. Isn't that correct? In some respects, Judge, but in other respects, isn't that not the standard we apply? Judge, I would argue that would make no difference because the recitation of facts are so close to one another. This is not a case with widely differing views of what happened. This was a very brief interaction between police officers and plaintiff. They agreed to the main facts, which is the officers got out of the car. They pushed him against the fence. They handcuffed him and put him in a car. And that the entire incident lasts anywhere between four and seven minutes. Plaintiff is the only one who identifies any level of injury. And quite frankly, there are none in this case. He claims, at least in his deposition, he claims that as he was in the car, his head hit the car. Now that has morphed from slammed into the car, shoved into the car. But that was not what he swore to. And if you look at page 65 of his deposition, he describes how he was rear handcuffed. And as they were placing him in the car, he hit his head. But there's no injury. In fact, he never even looked for an injury. He never checked his head after the arrest to see whether or not he had broken skin, blood, bruising at all, because he didn't. He claims that he hurt his knee, but the knee, the mechanism of injury was when he was pushed into a chain link fence. So and he said he never received any medical treatment, never, never sought medical treatment for his knee. And the pain resolved within at best a day. So the only injury that he can identify to the extent it even rises to the level of an injury is that he had broken skin on his wrists. But there is a number of handcuffs, right? From handcuffs that were too tight. Yeah, Judge. But again, if you look at some of the cases that have addressed handcuffing, and specifically Horace versus Gibbs, gives the three part test of when handcuffing rises to the level of a constitutionally significant harm. And in that three part test, they have to establish that they were unreasonably tight, that the plaintiff complained about it, and that there was injury and he fails on all three. Let me explain. The officers and as Judge Percedi found in his decision, arrested an individual suspected of a sexual crime, and he was handcuffed. He says at one point, plaintiff doesn't say I'm hurt. He doesn't say I'm in pain. He doesn't complain about pain. He simply says the handcuffs are too tight. And everyone agrees that he was only in handcuffs for between two and three minutes. And finally, there is no legitimate or no real injury. He said he had some broken skin. He does not add, he doesn't take an aspirin. He doesn't seek medical treatment. It resolves within a day or two. He doesn't even put topical ointment on and he just simply lets it heal. So do you concede that the officers acted inappropriately? Absolutely not, Judge. They acted entirely appropriately. In my view, they had a photograph of an individual wanted for the commission of a crime. That photograph is not in the record, is it? Um, you know, Judge, unfortunately, I can't tell you. I don't know. But I will tell you what is in the record, which is plaintiff's deposition, because I showed plaintiff that photograph and asked him, doesn't that person look like you? And he conceded that it does. And he's not. How do I say this politely? He's an unusual looking guy. He's very thin. He was wearing glasses. He has a bald head. And he looked remarkably like the individual in the photograph. And there was an arrest warrant for that individual. And keep in mind, plaintiff acknowledges that as a former law enforcement officer himself, very quickly into this incident, he was abducted, which is why he was noncompliant. But he also thought he was being robbed. At first, he jumped out of the car. He said they didn't verbally identify themselves as officers. That's the point. He has a different story than the officers. And that's a factual issue. And ordinarily, factual issues are reserved for a false arrest claim, which is not excellent in this case. Quite frankly, plaintiff withdrew it on the fact. So there was no false arrest claim here. So whether or not they identified them immediately or not has nothing to do with an excessive force claim. But plaintiff testified that as a former law enforcement officer, three things clued him into the fact that these were actually police officers. He saw the shield around the neck. He saw the make and model of the gun on the hip. And they applied what they call an arm bar. And this plaintiff had trained federal probation officers in the application of that very same handcuffing technique. So he recognized that there was a good reason for that. Plaintiff was noncompliant through the entire episode, because even he admitted while he was being placed into the car that he was still screaming at people to call 911, call help, call help. He thought he was being abducted. Well, I understand that, Judge. But again, that goes to false arrest. It doesn't go to excessive force. And the officers had a warrant for a person that matched the description. And plaintiff matched the description of the person they were looking for. So they had every right to take him into custody. So the only question here is whether or not the use of force was objectively reasonable. And it's clear that while, and nobody's has alleged that plaintiff resisted arrest, it is clear from the record that he was noncompliant in the process. And keep in mind, he also refused to identify himself. Had he said at the very outset, as they The issue goes to whether or not the officer's use of force was objectively reasonable. And I would suggest, Your Honor, there was nothing in this record to suggest it was not. And that is what Judge Rossetti found. And he didn't simply rely on the lack of injury in determining whether or not there was excessive force or no excessive force, for instance, as they did in the excessive force case. Judge Rossetti went through the entire analysis. And first, he said that it was objectively reasonable, because there has to be a level of force used when making an arrest. And then he went to the handcuff analysis and said that he described the incident totally from the point of view of the two officers. That's what I that's what I worry is not is not according to our standards of deciding summary judgment motions. Judge, I don't read the decision quite as literally as you do in that regard. I believe that while he did mention at the beginning of his decision, this is what the officers say. He then moved on to plaintiffs. No. And then he said that the plaintiff has a different version. That's not the same as crediting what the plaintiff says as true on a summary judgment motion. But Judge, I mean, if you look at Page 9 of the decision, he relies entirely on plaintiff's allegations with respect to the level of injury. He also, I mean, this is undisputed. That plaintiff matched the physical description of an individual with an outstanding warrant. And that's undisputed in the record. And it would be, you know, quite frankly, inappropriate for the court to just disregard the fact that there's no dispute. Even plaintiff now concedes that there was an arrest warrant for an individual who matched his description and that these were two officers in the process of effecting an arrest. And Judge, what I would say is, you know, in a case of this nature where you have a three to four minute interaction or at most seven minute interaction where a person is taken into custody in good faith, there's no claim of false arrest. And once he's identified, he's released. He's handcuffed momentarily, two or three minutes, suffers virtually no injury. If this is a case that doesn't warrant summary judgment, then I can't imagine a case that is. This is a case that screams for dismissal via summary judgment based on plaintiff's own recitation of the relevant facts, which are he suffered no legitimate injury. He was in custody for a momentary period of time. The officers had a legitimate basis for stopping and handcuffing. So if we don't have summary judgment on a case like this, we are essentially opening the floodgates to assess the cases in the district. Thank you. Now, I know I'm over my time. Should I address or not address the reassignment? No. No. Thank you, Judge. Thank you, Your Honors. Counsel, you have two minutes for rebuttal. Can you respond that this case cries out for summary judgment for the officers? Turn on your microphone. Yep. Sorry about that. Again, Your Honor, this case does present two starkly different versions of the fact. And getting to this point about resisting arrest versus... Yeah. Could you focus on exactly where are the factual, like three factual disputes that are relevant to the excessive force claim as opposed to the abandoned fault? Imprisonment claim. What are the three factual disputes that you would highlight? Whether Mr. Ketchum used force against the officers, Judge Bracetti uses the word force that Mr. Ketchum used against the police officers, whether he was attempting to evade arrest. Evade arrest is another direct quote from Judge Bracetti's opinion, whether he tried pushing past the officers. Again, something taken directly from the officer's version and directly contradicted by Mr. Ketchum. And finally, Judge Bracetti's conclusion that Mr. Ketchum inadvertently bumped his head on the side of the car when he clearly testified that an officer took his hand, put it on the side of Mr. Ketchum's head and shoved it into the side of the car. All of those are factual disputes that Judge Bracetti improperly decided in favor of the move-in. And what about with regard to the type of injury that your client says he suffered? I don't know. Yeah. I don't think that there's a factual dispute about the injuries that he suffered. No, Your Honor. Okay. Thank you very much. I'll continue. You have a couple of seconds left. Did you want to summarize? Your Honor, I think the court has focused on the key points that this approach to summary judgment really turned the standard on its head, and that alone requires vacatur and remand. Thank you. Thank you both for a nice argument. I will reserve decision.